[No. B057289. Second Dist., Div. Four. Oct. 23, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
CLETUS ROBERT ANDERSON, Defendant and Appellant.

**COUNSEL**

John E. Douglass, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney

General, Linda C. Johnson and Susan D. Martynec, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COOPER, J.\***—Defendant appeals from his conviction of violation of Penal Code section 653w. The conviction was based on evidence which established that he possessed for sale some 4,500 audiotapes, identified by an expert witness as "pirate recordings." By this appeal, he challenges the constitutionality of the statute, contending that it violates the First Amendment to the United States Constitution, that it is unconstitutionally overbroad, and that it is preempted by federal copyright laws.

By way of demurrer, he had, prior to trial, challenged the constitutionality of Penal Code section 653w on essentially the same grounds raised on this appeal. He waived jury following the unfavorable ruling on his demurrer. This appeal is taken from the order granting him probation on condition he serve 180 days in the county jail.

### THE STATUTE

Penal Code section 653w was enacted as part of a comprehensive statutory scheme designed to prevent and punish the misappropriation of recorded music for commercial advantage or private financial gain. (Pen. Code, § 653h.) On the date of appellant's arrest, Penal Code section 653w provided in pertinent part as follows: "(a) A person is guilty of failure to disclose the origin of a recording or audiovisual work when, for commercial advantage or private financial gain, he or she knowingly advertises or offers for sale or resale, or sells or resells, . . . or possesses for these purposes, any recording or audiovisual work, the outside cover box or jacket of which does not clearly and conspicuously disclose the actual true name and address of the manufacturer thereof and the name of the actual author, artist, performer, producer, programer, or group."[1]

Although other provisions of the "anti-piracy" legislation have been evaluated and upheld by the courts of this state (see, e.g., *Capitol Records, Inc.* v. *Erickson* (1969) 2 Cal.App.3d 526 [82 Cal.Rptr. 798, 40 A.L.R.3d 553], cert. den. 398 U.S. 960 [26 L.Ed.2d 545, 90 S.Ct. 2176]), the question of the

---

\*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.

[1]Subsequent modifications of this statute have no bearing on the issues presented in this appeal.

constitutionality of the disclosure requirements of Penal Code section 653w appears to be one of first impression.

## First Amendment

■ Citing *Talley* v. *California* (1960) 362 U.S. 60 [4 L.Ed.2d 559, 80 S.Ct. 536], appellant contends that the requirement of disclosing the identity of the manufacturers of audiotapes or videotapes, is likely to inhibit speech and is thus violative of the First Amendment.

In *Talley, supra*, the court found invalid a Los Angeles ordinance which provided that: " 'No person shall distribute any hand-bill in any place under any circumstances, which does not have printed on the cover, or the face thereof, the name and address of the following: [¶] (a) The person who printed, wrote, compiled, or manufactured the same.' " (362 U.S. at pp. 60-61 [4 L.Ed.2d at p. 561].)

We are persuaded that two significant features of the instant legislation serve to distinguish it from the offending statute in *Talley*. First, as we shall discuss, the intent and purpose of the statute must be evaluated and weighed against a potential to inhibit speech. (*Canon* v. *Justice Court* (1964) 61 Cal.2d 446, 451-454 [39 Cal.Rptr. 228, 393 P.2d 428].) Second, the "speech" at issue here is commercial speech, subject to less severe scrutiny than other forms of protected communication. (*Zauderer* v. *Office of Disciplinary Counsel* (1985) 471 U.S. 626, 651 [85 L.Ed.2d 652, 672, 105 S.Ct. 2265].)

We begin with a discussion of *Talley* v. *California, supra*, 362 U.S. 60. The Supreme Court found that the Los Angeles handbill ordinance (which was not limited to handbills deemed obscene or offensive to public morals, nor likely to identify those responsible for fraud, false advertising or libel) was so broad as to bar "all handbills under all circumstances anywhere" which are issued anonymously. (*Talley* v. *California, supra*, 362 U.S. at p. 64 [4 L.Ed.2d at p. 563].) Of significance is the basis for the decision and the limitations the court itself imposed on the result. At page 65 [4 L.Ed.2d at page 563], the court observed: "We have recently had occasion to hold in two cases that there are times and circumstances when States may not compel members of groups engaged in the dissemination of ideas to be publicly identified. *Bates* v. *Little Rock*, 361 U.S. 516 [4 L.Ed.2d 480, 80 S.Ct. 412]; *N.A.A.C.P.* v. *Alabama*, 357 U.S. 449, 462 [2 L.Ed.2d 1488, 1499, 78 S.Ct. 1163]. The reason for those holdings was that identification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance. This broad Los Angeles ordinance is subject to the same

infirmity. We hold that it, like the Griffin, Georgia, ordinance, is void on its face."

However, as the court in *Eisen v. Regents of University of California* (1969) 269 Cal.App.2d 696, 702 [75 Cal.Rptr. 45, 37 A.L.R.3d 1300], observed: " '. . . *Talley* [did not] hold that anonymity is always protected. . . . The court expressly stated that it was not passing on the validity of an ordinance intended to and in fact limited to the accomplishments of valid purposes.' "

Since *Talley*, litigants have frequently challenged "registration" or "identification" type statutes or ordinances, asserting a constitutional "right to anonymity." (See, e.g., *Huntley v. Public Util. Com.* (1968) 69 Cal.2d 67, 75 [69 Cal.Rptr. 605, 442 P.2d 685]; *Eisen v. Regents of University of California, supra*, 269 Cal.App.2d 696; *Canon v. Justice Court, supra*, 61 Cal.2d 446.)

Most of the cases which have analyzed statutes compelling the disclosure of information have done so in the context of political speech. While this category of speech may be said to be the most zealously guarded by our constitution, nonetheless narrowly drawn statutes designed to serve a particular public need have been upheld. In *Canon v. Justice Court, supra*, 61 Cal.2d 446, the California court analyzed an Elections Code provision which required the identification of the author of all political material "designed to injure or defeat" any candidate. The court discussed the holding in *Talley* and the purpose of the legislation at issue and observed: "The crucial question, then, is whether the end to be achieved by the disclosure requirement justifies the resulting impairment of freedom of expression. Certainly, not every infringement upon freedom of speech, of whatever degree and without regard to any countervailing interest, is constitutionally forbidden." (*Id.*, at p. 456.)

Although the statute in *Canon* was invalidated on other grounds, the court found no improper infringement of the right to free speech. "It is clear that the integrity of elections, essential to the very.preservation of a free society, is a matter 'in which the State may have a compelling regulatory concern.' [Citation.] It was not the aim of the Legislature to hinder the communication of ideas." (*Canon v. Justice Court, supra*, 61 Cal.2d at pp. 452-453.)

The state's interest in enacting Penal Code section 653w is the desire to protect the public in general, and the many employees of the vast entertainment industry in particular, from the hundreds of millions of dollars in losses suffered as a result of the "piracy and bootlegging" of the industry's

products. (Testimony before the Assem. Crim. Law and Pub. Saf. Com., June 1984, Atty. Gen. Analysis, Assem. Bill No. 3619 (1983-1984 Reg. Sess.) Aug. 1984.) The statute is narrowly and specifically drawn to meet that objective.

Although it is certainly conceivable that the statute could, as appellant argues, deter someone from reducing to taped form and distributing his seditious or potentially unpopular views, this outcome is unlikely, inasmuch as the statute applies only to those who possess or distribute such material "for commercial advantage or private financial gain." (Pen. Code, § 653w.) A truly zealous and committed proselytizer may distribute his or her anonymous views, reproduced in any form, free of charge and free from the restraints imposed by this statute.

California has a compelling interest in protecting the public from being victimized by false and deceptive commercial practices. (See, e.g., *People* v. *Superior Court (Olson)* (1979) 96 Cal.App.3d 181, 190-191 [157 Cal.Rptr. 628].) "Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society." (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 808 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].)

The second infirmity in appellant's constitutional challenge lies in the fact that the statute proscribes only "commercial speech." "Thus, we are not confronted with the difficult task of drawing a distinction between 'talk for profit, and talk for other purposes' or of determining the degree of First Amendment protection which should be accorded speech embodying both qualities. [Citation.]" (*People* v. *Superior Court (Olson)*, *supra*, 96 Cal.App.3d at p. 191.)

Although we have concluded that a compelling state interest justifies the legislation at bar, where commercial speech is affected, the state need only show a reasonable relationship between the statute and the state's interest in preventing deception of consumers. (*Zauderer* v. *Office of Disciplinary Counsel, supra*, 471 U.S. at p. 651 [85 L.Ed.2d at p. 673].) In *Zauderer*, the court examined a state statute which required that any advertising by an attorney contain certain disclosures about the terms under which the attorney's services would be available. The court's explication of the constitutional considerations is equally applicable in this case: "Because the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides, [citation], appellant's constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal. Thus, in virtually all our commercial speech decisions to date, we have emphasized that because disclosure requirements trench much more narrowly on an advertiser's

interests than do flat prohibitions on speech, 'warning[s] or disclaimer[s] might be appropriately required . . . in order to dissipate the possibility of consumer confusion or deception.' [Citations.]" (*Id.*, at p. 651 [85 L.Ed.2d at p. 672], italics in original.)

In resolving the constitutional challenge in *Zauderer* v. *Office of Disciplinary Counsel, supra,* 471 U.S. at page 652, footnote 14 [85 L.Ed.2d at page 673], the court concluded: "The right of a commercial speaker not to divulge accurate information regarding his services is not . . . a fundamental right."

We find no constitutional infirmity in Penal Code section 653w, which requires conspicuous disclosure of the name and address of the manufacturer of any audiotape or videotape offered or possessed for purposes of sale.

### OVERBREADTH

Appellant asserts that the statute is also unconstitutionally overbroad and cites examples of several apparently legitimate manufacturers of audiotapes and videotapes whose identification does not appear on the box or jacket containing the work. At the hearing on the demurrer, numerous exhibits were introduced to demonstrate this contention; copies of those exhibits are part of the record on appeal and do demonstrate that many commercial recordings available at retail stores do not comply with the requirements of section 653w. Appellant paints graphic word pictures by which we can envision innocent cashiers at retail record outlets being hauled off to jail for selling unidentified tapes teaching conversational German.

■ Although the argument is interesting, appellant does not have standing to raise it. Traditionally, one to whom a statute may constitutionally be applied cannot challenge that statute on the ground it may conceivably be applied unconstitutionally to others in situations not before the court. (*New York* v. *Ferber* (1982) 458 U.S. 747, 757 [73 L.Ed.2d 1113, 1123, 102 S.Ct. 3348].) Although the overbreadth doctrine is a recognized exception to this rule, that exception does not apply to commercial speech. (*Board of Trustees, State Univ. of N.Y.* v. *Fox* (1989) 492 U.S. 469, 481 [106 L.Ed.2d 388, 404, 109 S.Ct. 3028]; *Hoffman Estates* v. *Flipside, Hoffman Estates* (1982) 455 U.S. 489, 496-497 [71 L.Ed.2d 362, 370-371, 102 S.Ct. 1186]; *Bates* v. *State Bar of Arizona* (1977) 433 U.S. 350, 380-381 [53 L.Ed.2d 810, 833-834, 97 S.Ct. 2691].)

As the Supreme Court explained in *Board of Trustees, State Univ. of N.Y.* v. *Fox, supra,* 492 U.S. 469, "commercial speech is more hardy, less likely to

be 'chilled,' and not in need of surrogate litigators. [Citations.]" (*Id.*, at p. 481 [106 L.Ed.2d at p. 404].)

Appellant does not have standing to raise the issue of the statute's alleged overbreadth, and we therefore do not reach it.

### FEDERAL PREEMPTION

■ Finally, appellant contends that the statute is void because it is preempted by federal copyright laws. (17 U.S.C., §§ 101 and 409.) This contention is without merit.

In *Goldstein* v. *California* (1973) 412 U.S. 546 [37 L.Ed.2d 163, 93 S.Ct. 2303], two defendants were charged with misdemeanor violations of Penal Code section 653h, a statute making it a criminal offense to "pirate" recordings produced by others. On appeal from their convictions, they contended that by protecting the rights of artists and performers in their recordings, the state was in essence providing copyright protection, in conflict with federal copyright laws. The United States Supreme Court rejected even their foundational argument that federal law prevents the states from exercising the power to enact copyright statutes. (*Goldstein* v. *California, supra,* 412 U.S. at p. 553 [37 L.Ed.2d at p. 172].) The court further evaluated the subject statute, its purposes and effects, and found no constitutional violation. At page 571 [37 L.Ed.2d at page 182], the *Goldstein* court concluded: "The California statutory scheme evidences a legislative policy to prohibit 'tape piracy' and 'record piracy,' conduct that may adversely affect the continued production of new recordings, a large industry in California. Accordingly, the State has, by statute, given to recordings the attributes of property. No restraint has been placed on the use of an idea or concept; rather, petitioners and other individuals remain free to record the same compositions in precisely the same manner and with the same personnel as appeared on the original recording. [¶] In sum, we have shown that section 653h does not conflict with the federal copyright statute enacted by Congress in 1909 [or with the copyright statute passed in 1971]."

Appellant's arguments here are equally unavailing. We see no significant distinction between the purpose and effect of the disclosure requirements of Penal Code section 653w and the unlawful-duplication prohibition of Penal Code section 653h, as they impact on federal copyright laws.

## Disposition

The judgment appealed from (order granting probation) is affirmed.

Woods (A. M.), P. J., and Epstein, J., concurred.

A petition for a rehearing was denied November 8, 1991, and appellant's petition for review by the Supreme Court was denied January 22, 1992.